IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Edward Jones,**<br>**Individually and on behalf of**<br>**all others similarly situated,** | Case No.  1:23CV1512 |
| Plaintiff, | |
| | JUDGE PAMELA A. BARKER |
| -vs- | |
| **Kroy, LLC,**<br>**dba Buckeye Business Products, Inc.,** | ORDER GRANTING APPROVAL OF<br>FLSA COLLECTIVE ACTION<br>SETTLEMENT |
| Defendant. | |

This matter is before the Court on the Parties' Joint Motion for Approval of FLSA Collective Action Settlement pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  (Doc. No. 21.)  Therein, the Parties ask the Court to approve, as fair and reasonable, the proposed settlement (hereinafter "Settlement") reached by the Parties and memorialized in the Agreement of Settlement and Release (hereinafter "Agreement"), attached to the Joint Motion as Exhibit 1.[1]  (Doc. No. 21-1.) The Parties also ask the Court to approve the "Notice of Settlement of Wage Lawsuit"  (hereinafter "Notice") and "Claim Form and Release" (hereinafter "Claim Form" or "Consent Form")  attached to the Joint Motion as Exhibits 3 and 4. (Doc. Nos. 21-3 and 21-4.)

Having reviewed the Joint Motion (Doc. No. 21), Settlement Agreement (Doc. No. 21-1), Notice (Doc. No. 21-3), Consent Form (Doc. No. 21-4), Declaration of Counsel (Doc. No. 21-5), Example Calculations (Doc. No. 21-6), as well as the pleadings and papers filed in this action, and

---

[1] Unless otherwise defined, all terms used in this Order have the same meanings as defined in the Agreement.

for good cause established therein, the Court enters this Final Order and Judgment Approving Settlement and Dismissing Action, as follows:

1. On August 3, 2023, Plaintiff Edward Jones filed a Class Action and Collective Action Complaint against Defendant Kroy LLC dba Buckeye Business Products, Inc., asserting claims under the FLSA and Ohio Rev. Code §§ 4113.15 and 2307.60. (Doc. No. 1.) On January 29, 2024, Plaintiff filed a First Amended Class Action and Collective Action Complaint. (Doc. No. 11.)

2. In the First Amended Complaint, Plaintiff alleged that Defendant violated the FLSA by failing to pay overtime compensation to Plaintiff and other similarly-situated employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek. (*Id*. at ¶¶ 24-59.) Specifically, Plaintiff alleged that Defendant shortchanged employees and avoided paying earned and owed wages through unlawful time rounding policies and practices, as well as impermissible meal break deduction policies and practices. (*Id*.)

3. Plaintiff asserted two separate putative classes under the FLSA and Ohio Wage and Hour law: (1) a "Time Rounding" FLSA Collective/Rule 23 Class and (2) a "Time Deduction" FLSA Collective/Rule 23 Class. (*Id*. at ¶¶ 4, 5, 82 -84, 97-102, 127.) The Amended Complaint included three claims: (1) individual and collective FLSA claims related to Defendant's alleged Time Rounding and Time Deduction practices (Count I); (2) individual and Rule 23 Ohio Wage and Hour claims related to Defendant's alleged Time Rounding and Time Deduction practices (Count II); and (3) individual and Rule 23 Ohio claims for "Damages for Criminal Acts" under Ohio Rev. Code § 2307.60. (*Id*. at pp. 30 -34.)

4. Defendant filed an Answer in which it denied all liability as to all of Plaintiffs' claims and asserted various affirmative defenses. (Doc. No. 13.)

5. The Parties engaged in extensive discovery, and Defendant produced voluminous wage-and-hour data and documents necessary to enable the Plaintiffs to fully evaluate the overtime claims in this case. (Declaration of Attorney Ryan Winters (Doc. No. 21-5) at ¶ 17.) Specifically, Defendant provided Plaintiff with payroll and timekeeping records comprised of millions of data points for Defendant's Cleveland, Ohio employees. (*Id.*) Plaintiff's Counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents. (*Id.* at ¶ 18.) In addition, Plaintiff's Counsel created a damages model from the raw wage-and-hour data produced by Defendant. (*Id.*)

6. Plaintiff also served an Omnibus First Set of Discovery Requests to Defendant requesting, among other things, all records pertaining or related to employee handbooks; human resources policies, manuals, or memos; timesheets and other timekeeping records; any review or other modification of hours, timekeeping, or other wage and hour records; and all other records for Plaintiff and other workers relating or pertaining to the activities, duties and tasks of these workers, including, but not limited to, any records generated by scheduling, tracking, logging, timing, clocking, measuring, recording, or monitoring the time worked by members of both collective classes. (*Id.* at ¶ 19.) Defendant produced voluminous compensation and timekeeping data and documents in addition to relevant PDF policies and Microsoft Excel spreadsheets where available. (*Id.*)

7. The parties engaged in extensive settlement negotiations and were able to reach a global settlement encompassing all issues. (*Id.* at ¶¶ 27, 30.)

8. On May 13, 2024, the parties filed a Joint Motion for Approval of Settlement Pursuant to Section 216(B) of the FLSA. (Doc. No. 21.) The parties provided the following documents in support of the Joint Motion: (1) the parties' Agreement (Doc. No. 21-1); (2) the Notice (Doc. No. 21-

3

3); (3) the Consent Form and Release (Doc. No. 21-4); (4) the Declaration of Plaintiff's Counsel Ryan A. Winters (Doc. No. 21-5); and (5) "Example Calculations" (Doc. No. 21-6.)

9. As set forth in the Agreement, the Settlement will apply to Representative Plaintiff Jones and to all Time Rounding FLSA Collective Potential Opt-Ins and all Time Deduction FLSA Collective Potential Opt-Ins. The Time Round and Time Deduction Collectives are further defined in the Agreement as follows:

> a) "Time Rounding FLSA Collective" means all present and former hourly employees of Defendant during the period of August 3, 2020 until August 3, 2023 who, during their employment, experienced a net reduction of actual work hours due to the application of Defendant's time rounding policy.
>
> b) "Time Deduction FLSA Collective" means all present and former hourly employees of Defendant during the period of August 3, 2020 until August 3, 2023 who (1) recorded work hours during one or more workweeks during the period of August 3, 2020 until August 3, 2023, (2) were not compensated for all hours worked by virtue of receiving a time deduction for a meal and/or lunch period during the period of August 3, 2020 until such time as the employee received a time credit for a missed meal and/or lunch period, was no longer employed by Defendant, or August 3, 2023, whichever occurred first.

(Doc. No. 21-1 at p. 4.)

10. Upon careful review, the Court hereby approves and authorizes the distribution of the Notice (Doc. No. 21-3) and Consent Form (Doc. No. 21-4) to Potential Opt-Ins in the manner, and subject to the terms and conditions, set forth in the Agreement. Specifically, and pursuant to Paragraph 6 of the Agreement, within 14 calendar days of the date of this Order, Defense Counsel will send to Plaintiffs' Counsel a Microsoft Excel Spreadsheet that contains information including the name, dates of employment from August 3, 2020 until August 3, 2023, weeks worked from August 3, 2020 until August 3, 2023, and identification of each individual as a Potential Opt-in of the Time Rounding FLSA Collective and/or Potential Opt-in of the Time Deduction FLSA Collective.

(Doc. No. 21-1 at ¶ 6.) Within 28 calendar days of the date of this Order, Defendant will hand deliver or mail the Notice and Consent Form to each Potential Opt-In. (*Id*.) Defense Counsel will send confirmation to Plaintiffs' Counsel that the Notice and Consent Form was hand delivered or mailed to all Potential Opt-Ins. (*Id*.) If the Postal Service returns any Notice and Consent Form to Defendant with a forwarding address, Defendant will promptly mail the Notice and Consent Form to the forwarding address. (*Id*.) If the Postal Service returns any package to Defendant without a forwarding address, Defendant will work diligently to obtain an updated address and will promptly mail the Notice and Consent Form to any updated address. (*Id*.) Any refused hand deliveries of the Notice and Consent Form will be mailed pursuant to the above instructions. (*Id*.)

11.     The Court also approves the process outlined in the Agreement by which Potential Opt-Ins become Opt-In Plaintiffs and become entitled to a Settlement Award payment. Specifically, pursuant to Paragraphs 8 and 9 of the Agreement, Potential Opt-Ins desiring to include themselves in the settlement (and to become settlement Participating Employee Opt-In Plaintiffs) must do so by completing the "Claim Form and Release" (or Consent Form) attached to the Joint Motion as Exhibit 4 . (Doc. No. 21-1 at ¶¶ 8, 9; Doc. No. 21-4.) Completed Consent Forms must be returned to Defendant pursuant to the instructions in the Notice and Consent Form and must be delivered or postmarked within ninety (90) calendar days after the Notice to Potential Opt-Ins initial mailing date by Defendant. (Doc. No. 21-1 at ¶ 8.) Executed Consent Forms from eligible Opt-In Plaintiff settlement participants will be filed by Defendant's Counsel with the Court. (*Id*. at ¶ 9.) Within fourteen (14) calendar days after the consent period is completed, all of the Participating Employee Opt-In Plaintiffs' Consent Forms will be filed with the Court. (*Id*.)

12. The Court further finds, upon careful consideration and for the following reasons, that the terms of the proposed Settlement are fair and reasonable and satisfy the standard for approval under the FLSA, 29 U.S.C. § 216(b).

13. In reviewing the settlement of a federal plaintiff's FLSA claims, the district court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Rotuna v. W. Customer Mgmt. Group LLC*, 2010 WL 2490989 (N.D. Ohio June 15, 2010.) The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *See Andrus v. DenOne, LLC*, 2019 WL 13195500 at * 1 (N.D. Ohio Nov. 22, 2019). The Court should also consider the following factors: the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement. *Id.* In addition, where the settlement agreement proposes an award of attorney's fees, such fees must be reasonable. *See generally Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 893 (1984)).

14. Here, the Court finds that the instant action presents a *bona fide* dispute. As noted above, Plaintiff alleged that Defendant shortchanged employees and avoided paying earned and owed wages through unlawful time rounding policies and practices, as well as impermissible meal break deduction policies and practices. (Doc. No. 11.) Plaintiff further alleged that Plaintiff's and other similarly situated employees' time worked was manipulated and/or edited by management, including but not limited to as a result of time rounding and improperly added breaks, resulting in less time paid than time worked. (*Id.*) Defendant denies Plaintiffs' allegations, asserts that Plaintiffs were properly

paid, and denies that any of the Plaintiffs are entitled to damages. (Doc. No. 13.) Defendant also maintains that it acted in good faith and that any alleged violations were *de minimis* and not willful. (*Id*.) The divergent views of the facts and the law present *bona fide* disputes that, had the parties not reached settlement, would have necessitated resolution by the Court and/or a jury.

15. The Court further finds the terms of the Agreement are fair and reasonable. In this regard, the Court notes the settlement was the product of arms-length negotiations between the parties that were represented by capable and experienced counsel. (Doc. No. 21-5 at ¶¶ 23-27, 30.) Additionally, the Court observes that, given the factual and legal complexity of the case, there is no guarantee Plaintiffs would have prevailed. In contrast, the Agreement assures Plaintiffs will receive compensation for alleged violations at issue. As one court in this District has found, "the certainty and finality that comes with settlement also weighs in favor of" approving a fair and reasonable settlement. *Dillworth v. Case Farms Processing, Inc*., 2010 WL 776933 at *6 (N.D. Ohio March 8, 2010). *See also Andrus*, 2019 WL 13195500 at * 2. Moreover, approval of a fair and reasonable agreement promotes the public's interest in encouraging settlement of litigation. *See Andrus*, 2019 WL 13195500 at * 2 (collecting cases).

16. Upon careful consideration, the Court finds that the total settlement payment, as well as the proposed distributions to the Representative Plaintiff and Potential Opt-Ins, are fair and reasonable. As set forth in the Agreement, Defendant has agreed to pay the Total Settlement Amount of $150,000. (Doc. No. 21 at p. 9; Doc. No. 21-1 at p. 7.) That amount does not include the required employer payroll and employment tax obligations with respect to any portion of the settlement payments paid to Named Plaintiff or the Opt-In Plaintiffs as wages under IRS Form W-2, which Defendant will pay in addition to the Total Settlement Amount. (*Id*.) Of the Total Settlement Amount

of $150,000, the Agreement provides that $95,000 will be paid to the Potential Opt-Ins that submit Consent Forms. (Doc. No. 21-1 at p. 3; Doc. No. 21 at p. 9.) The $95,000 will be divided between the two Collectives as follows: (1) $78,813.88 will be allocated to the Time Rounding FLSA Collective; and (2) $16,186.12 will be allocated to the Time Deduction FLSA Collective.[2] (Doc. No. 21 at p. 9.)

17.  Based on Plaintiff's Counsel's investigation and analysis of the documents and data produced in discovery, Plaintiff's Counsel avers that the individual settlement payments to the Plaintiffs represent a substantial percentage of the potential value of their claims. (Doc. No. 21-5 at ¶ 30; Doc. No. 21 at 9-10.) The Court finds that the proposed allocation and calculation of the Settlement Award payments are fair and reasonable.

18.  The Agreement also includes a payment to Plaintiff's Counsel for attorney's fees and costs. Specifically, from the Total Settlement Amount, Plaintiffs' Counsel will receive attorneys' fees and costs in the total amount of $49,000. (Doc. No. 21-1 at ¶ 11.) Of this amount, $431.18 represents costs and litigation expenses, and the remaining $48,568.82 represents attorney's fees. (Doc. No. 21-5 at ¶¶ 42, 44; Doc. No. 21 at p. 11.)

19.  "The FLSA provides that, if the court enters judgment in favor of a plaintiff on a claim of unpaid overtime in violation of the Act, '[t]he court in such action shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'" *Rembert v. A Plus Home Health Agency LLC,* 986 F.3d 613, 616 (6th Cir. 2021) (quoting 29 U.S.C. § 216(b)). A reasonable fee should be adequate to attract competent counsel but avoid providing a windfall for attorneys. *Geier*

---

[2] The Agreement also includes a process for withholding and distributing unclaimed funds. (Doc. No. 21-1 at ¶ 13.)

v. *Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Because the FLSA does not discuss what constitutes a reasonable fee, "the determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). *See also Smyers v. Ohio Mulch Supply*, 2021 WL 2774665 at * 2 (6th Cir. July 1, 2021). The purpose of the FLSA's mandate of an award of reasonable fees to prevailing plaintiffs is to remedy concerns over situations where "the monetary value of [a plaintiff's] claims is often too small to support the cost of litigating them." *Rembert,* 986 F.3d at 617.

20. There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Osman v. Grube*, 2018 WL 2095172 at * 3 (N.D. Ohio May 4, 2018) (citing *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. Appx 496, 498 (6th Cir. 2011)). "The Sixth Circuit has approved both methods." *Id.* (citing *Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993)). "Courts readily approve the percentage-of-the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs." *Id.*

21. For the following reasons, the Court finds that the proposed attorney's fees and costs in the amount of $49,000 is reasonable. Using the "percentage of the fund" method, Plaintiff's requested attorney's fee award (i.e., $48,568.82 in fees after deduction of $431.18 in costs) comprises 32.38% of the Total Settlement Amount of $150,000. (Doc. No. 21 at p. 22.) This Court finds that this percentage is reasonable and appropriate under the circumstances, and in line with attorney fees awards in other FLSA Collective Action settlements in this District. *See Satterly v. Airstream, Inc.*, 2020 WL 6536342 at * 10 (S.D. Ohio Sept. 25, 2020) ("Federal jurisprudence within the Sixth

Circuit, including this Court, hold that 1/3 of the settlement fund is a 'normal fee amount in a wage and hour case.'") (quoting *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376 at *5 (S.D. Ohio Nov. 25, 2019) and collecting cases). *See also Rotuna*, 2010 WL 2490989 at * 8 (noting that one-third of the common fund is a reasonable attorneys' fee award "and has been approved in similar FLSA collective actions in this judicial district."); *Osman*, 2018 WL 2095172 at * 3 (same).

22. Additionally, the lodestar figure here confirms the reasonableness of Plaintiff's requested attorney fee award. Plaintiff's Counsel avers that, as of April 26, 2024, the attorneys working on this matter billed a total of 137.1 hours for a fee lodestar of $57, 337.50. (Doc. No. 21-5 at ¶ 41.) Specifically, Plaintiff's Counsel avers that: (1) Attorney Joseph F. Scott billed 13.8 hours at $500 per hour; (2) Attorney Ryan A. Winters billed 44.7 hours at $425 per hour; and (3) Attorney Kevin M. McDermott II billed 78.6 hours at $400 per hour. (*Id*. at ¶¶ 34, 41.)

23. When compared to the fee lodestar of $57,337.50, Plaintiff's Counsel avers that the requested attorney's fees of $48,568.82 results in a "negative multiplier" of 0.85. (Doc. No. 21-5 at ¶ 42.) In other words, Plaintiffs' Counsel has agreed to recover a reduced attorney fee— approximately 85%-- of their lodestar attorney fees incurred to date. (*Id*. at ¶ 43.) Moreover, Plaintiff's Counsel's lodestar has not been adjusted to account for the time Plaintiff's Counsel will expend fulfilling the obligations in the Agreement, monitoring the administration of the Settlement, continuing to respond to questions and inquiries from Named Plaintiff and the Potential Opt-Ins who submit Consent Forms, and continuing representation of Named Plaintiff and Opt-Ins Plaintiffs through the conclusion of this matter and disbursement of settlement proceeds. (*Id*. at ¶ 39.) Plaintiff's Counsel's lodestar also does not include the additional attorney hours counsel collectively has and will spend preparing, reviewing changes by defense counsel, and finalizing the briefing of

the motion for approval and related exhibits up to and until the filing of the motion (between April 26, 2024 and the date of filing) and any other work completed after April 26, 2024. (*Id*. at ¶ 40.)

24. Considering the above, as well as the fact that the Agreement ensures substantial payments to the Representative Plaintiff and Potential Opt-Ins, the Court finds that both the percentage of the funds and the lodestar calculation in this matter support the reasonableness of the attorney fee request. *See Rembert*, 986 F.3d at 616-618. The Court also finds that the requested costs of $431.18 are reasonable. The Court therefore approves the payment of attorneys' fees and costs to Plaintiff's Counsel as provided in the Agreement, and orders that such payments be made in the manner, and subject to the terms and conditions, set forth in the Agreement.

25. The Agreement also includes a Service Award to Representative Plaintiff Edward Jones in the amount of $6,000. (Doc. No. 21-1 at ¶ 12.) "Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Osman*, 2018 WL 2095172 at * 2. "Numerous courts have authorized incentive awards [as] efficacious ways of encouraging member of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). *See also Dillworth*, 2010 WL 776933 at *7. Here, the Court approves the payment of the Service Award of $6,000 to the Representative Plaintiff Jones and orders that such Service Award be distributed in the manner, and subject to the terms and conditions, set forth in the Agreement.

26. The Court dismisses this action, and all claims in this matter, with prejudice. The Court finds there is no just reason for delay and directs the Clerk of the Court to enter this Final Order and Judgment immediately.

27. As requested by the parties in the Agreement, the Court retains jurisdiction over the Action to enforce the terms of the Agreement and resolve any and all disputes thereunder, including but not limited to the administration of the Settlement.

**IT IS SO ORDERED.**

Date: May 23, 2024

     s/Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE